**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KENNETH WARD,

                                   Plaintiff,

          - v -                                                    Civ. No. 9:07-CV-26
                                                                          (GTS/RFT)

LUCIEN LeCLAIRE, JR., *Acting Commissioner*;
LAWRENCE SEARS, *Superintendent, Franklin Correctional Facility*;
J.D. DEMARS, *Deputy Superintendent of Programs*;
GLENN GOORD, *DOCS Commissioner*;
M. DUTIL, *Correctional Officer*; BRIAN FISCHER,
*Commissioner;* K. HABECK, *Deputy Superintendent of Administration*;
T. DUMAS, *Registered Nurse*; D.A. ROCK, *Deputy Superintendent of Security*,

                                   Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

KENNETH WARD
Plaintiff, *Pro se*
338 Bennington Dr.
Rochester, NY 14616

HON. ANDREW M. CUOMO                    CHRISTINA L. ROBERTS-RYBA, ESQ.
New York State Attorney General        Assistant Attorney General
*Attorney for Defendants*
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     *Pro se* Plaintiff Kenneth Ward brings this civil rights action pursuant to 42 U.S.C. §§ 1983,

1985, & 1986, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq*., as well as

several New York State statutes.  Dkt. No. 64, Am. Compl.  Plaintiff alleges that (1) the Defendants

violated his Eighth Amendment rights by failing to enforce the New York State Department of

Correctional Services' ("DOCS") smoking policy at Franklin Correctional Facility ("Franklin"), thereby exposing him to high levels of environmental tobacco smoke ("ETS") that caused his asthma condition to deteriorate and placed him at risk for more serious diseases, such as cancer; (2) Defendants conspired to "cover up" their failure to enforce the smoking rules; (3) the medical staff at Franklin were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; (4) the medical staff retaliated against him in violation of the First Amendment; (5) Defendant J.D. Demars violated his due process rights when he denied Plaintiff's request for a reasonable accommodation pursuant to the ADA; and (5) Defendants violated various articles of the New York State Constitution as well as other New York statutes. *Id.*

Defendants now bring a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, which Plaintiff opposes. Dkt. Nos. 85 & 94. For the reasons that follow, it is recommended that the Defendants' Motion be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiff was transferred from Upstate Correctional Facility ("Upstate") to Franklin in May 2006. Dkt. No. 86, Defs.' 7.1 Statement at ¶ 1.[1] Plaintiff claims that upon his arrival at Franklin, he was placed in reception dorm A-2, where he was exposed to high levels of ETS. Am. Compl. at ¶ 6. Thereafter Plaintiff was placed in housing unit M-2, where he alleges he was exposed to high levels of ETS for about two months. *Id.* at ¶ 7; Defs.' 7.1 Statement at ¶ 2. In August 2006, Plaintiff was transferred to housing unit B-2, where approximately sixty (60) inmates were housed. Am. Compl. at ¶ 10; Defs.' 7.1 Statement at ¶¶ 4-5. Plaintiff claims to have been exposed to dangerously

---

[1] When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, or visa versa, we will not cite to both 7.1 Statements. *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis in original).

high levels of ETS while housed in unit B-2.  Am. Compl. at ¶¶ 10-11.

Plaintiff claims he filed several complaints and grievances to various Defendants regarding his exposure to ETS and the treatment he was receiving for his asthma, but no corrective action was taken.  Am. Compl. at ¶¶ 12, 20, 22, 25, 29-31, 35-37, & 39.  Plaintiff also filed a request for reasonable accommodations on August 19, 2007, which was subsequently denied.  *Id*. at ¶ 33.

Along with his original Complaint, filed on January 8, 2007, Plaintiff filed a Motion for a Preliminary Injunction ("MPI") asking the Court to restrain the Defendants from exposing him to ETS and from retaliating, harassing, or threatening him.  Dkt. No. 4, Pl.'s MPI at p. 6.  On April 6, 2007, Plaintiff filed a Motion for a Temporary Restraining Order ("TRO") requesting to be removed from the "dangerously hazardous living conditions in which [he was] housed."  Dkt. No. 23, Pl.'s TRO at p. 1.  Both Motions were denied on May 24, 2007, by Order of the Honorable Lawrence E. Kahn, Senior District Judge for the Northern District of New York.  Dkt. No. 31.  On June 30, 2007, Plaintiff filed a second Motion for a TRO, again seeking to compel Defendants to enforce the smoking restrictions inside Franklin, which was also denied by Judge Kahn.  Dkt. Nos. 37 & 50.

Plaintiff's Amended Complaint was docketed on January 28, 2008.  Dkt. No. 64.  On that same date, Plaintiff was released from Franklin.  Defs.' 7.1 Statement at ¶ 85.  Defendants thereafter filed the instant Motion for Summary Judgment on September 15, 2008.  Dkt. No. 85.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers

to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Conditions of Confinement

Plaintiff alleges that he was exposed to extremely high ETS levels at Franklin that placed his health at risk. To establish civil liability for a violation of the conditions of confinement under the Eighth Amendment, a § 1983 plaintiff must demonstrate that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Helling v. McKinney*, the Supreme Court held that the aforementioned standard applies to Eighth Amendment claims premised upon exposure to second-hand smoke. Thus, under the first, objective prong, Plaintiff must demonstrate he was, or is, exposed to levels of ETS that have caused, or pose an unreasonable risk of causing, serious damage to his health that is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." 509 U.S. 25, 36 (1993) (emphasis in original). Under the second, subjective prong, a plaintiff must prove that a

defendant acted with deliberate indifference, which should be "determined in light of the prison authorities' current attitudes and conduct." *Id.*

Defendants allege that Plaintiff has failed to demonstrate that he was exposed to sufficiently serious levels of ETS.  In support of that claim, Defendants rely principally on *Zaire v. Artuz*, a decision from the Southern District of New York wherein summary judgment was granted on the grounds that the plaintiff failed to demonstrate that he was exposed to levels of ETS that violated contemporary standards of decency.  2003 WL 230868 (S.D.N.Y. Feb. 3, 2003).  In making that determination, the *Zaire* court relied heavily on the undisputed facts that the plaintiff's cell was untouched by ETS, that the alleged exposure occurred primarily in common areas plaintiff was not required to be in, and that his ETS exposure lasted only five months.  *Id.* at *4-5.

In this case, Plaintiff has alleged that he was exposed to seriously high levels of ETS from his arrival at Franklin in May 2006 until his release in January 2008.  In addition, Plaintiff alleges that he was exposed to ETS not only in the common areas such as the bath, shower, laundry, and TV rooms, but throughout the B-2 housing unit, including in the day-room and the sleeping dorm areas. Am. Compl. at ¶¶ 10, 12, 15, 21, & 40; Dkt. No. 85, Christina Roberts-Ryba, Esq., Affirm., dated Sept. 12, 2008, Ex. A, Pl.'s Dep. Tr., dated May 5, 2008, at p. 35 (describing the pervasiveness of the smoking in the B-2 unit at Franklin).  Furthermore,  Plaintiff states that out of the sixty (60) inmates that occupied the B-2 dorm, approximately forty-seven (47) were smokers.  Pl.'s Dep. at p. 35. Finally, Plaintiff has provided the Court with Affidavits from five other inmates, all of whom reiterate Plaintiff's allegations about the ETS levels in the B-2 housing unit and the Defendants' failure to remedy the situation. Dkt. No. 94, Pl.'s Resp. in Opp'n to Defs.' Mot., Ex. B, Inmate Affs. #1-5.  Thus, even if *Zaire* constituted controlling precedent, which it does not, the facts alleged in

*-6-*

this case are clearly distinguishable.

Defendants also contend that Plaintiff's health never worsened during his stay at Franklin, and, therefore, the ETS levels at Franklin did not create an unreasonable danger to his health. Plaintiff's medical records show that from September 2006 through September 2007, he complained that the ETS exacerbated his asthma condition.  Dkt. No. 85, Teresa Dumas Decl., dated Sept. 11, 2008, Ex. A, Pl.'s Med. Hist. (filed traditionally with the Court), Ambulatory Health R. (hereinafter "Pl.'s AHR") at entries dated 9/14/06, 3/22/07, 4/24/07, 6/14/07, 6/15/07, & 9/07.[2]  Plaintiff's medical records do not evidence any serious damage to his health, but neither do they entirely support the Defendants' argument that Plaintiff's health did not worsen while at Franklin.  In that respect, Plaintiff alleges that his exposure to ETS led to emergency hospital visits for asthma attacks on May 30, 31, and June 15, 2007.  Am. Compl. at ¶¶ 24 & 26.  Entries in Plaintiff's AHR from May 31, and June 15, 2007, show medical assessments of "exacerbation of asthma" and  "acute exacerbation of asthma," respectively.  Pl.'s AHR at entries dated 5/30/07 & 6/15/07.  Also, on several occasions the Franklin medical staff observed Plaintiff wheezing.  *Id*. at entries dated 2/15/07, 5/30/07, 6/14/07, & 6/15/07.

Moreover, the *Helling* Court made clear that the objective prong may be met by establishing an unreasonable *risk* of harm; thus, a plaintiff need not necessarily prove that his health deteriorated as a result of ETS exposure if he can demonstrate that he was exposed to levels of ETS that "violate[] contemporary standards of decency."  *Helling v. McKinney*, 509 U.S. at 36; *see, e.g., Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999) (holding that "after *Helling*, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference

---

[2] The date of the September 2007 entry in the Plaintiff's AHR is indecipherable.

to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health").  Therefore, we find that Plaintiff has met his burden under the objective prong. *See, e.g., Gill v. Smith*, 283 F. Supp. 2d 763, 768-79 (N.D.N.Y. 2003) (denying motion for summary judgement when the asthmatic plaintiff "provided evidence concerning the level of his alleged exposure to ETS [in the form of, *inter alia*, inmate affidavits,] and [evidence of] the asserted medical problems which resulted").

Under the subjective prong, Plaintiff must demonstrate that Defendants were deliberately indifferent to the conditions of his confinement.  Plaintiff alleges that the Defendants failed to enforce DOCS smoking policy and were deliberately indifferent to his complaints.  In 1999, DOCS implemented a four-phase program to restrict smoking in its facilities.  Dkt. No. 85-7, John Demars Decl., dated Sept. 4, 2008, at ¶ 4.  Since 2001, Franklin has been "operating within the fourth phase of the program," which prohibits all indoor smoking, limits inmate purchase and possession of tobacco products, and calls for misbehavior reports to be issued against any inmate who violates those rules.  *Id.* at ¶ 5 & Ex. A, DOCS Smoke-Free Policy Phase Chart.  In *Helling*, the Supreme Court stated that the adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference," and that "arguments regarding the realities of prison administration" are properly considered under the subjective prong.  *Helling*, 509 U.S. at 36-37.

We keep those instructions in mind while considering Plaintiff's deliberate indifference claims.  We begin by considering Plaintiff's claims against C.O. Dutil, Superintendent Sears, Deputy Superintendents Demars, Habeck, and Rock, all of whom worked at Franklin during the period relevant in this lawsuit.  We then consider his claims against Defendants Goord, Fischer, and LeClaire, all of whom have served as DOCS Commissioners.

-8-

1. *Deliberate Indifference Claims against Dutil*

Plaintiff alleges that in October 2006, he complained to Defendant Dutil, who works in the B-2 housing unit, that the indoor smoking problem was upsetting his asthma, and that Dutil failed to enforce the smoke-free policy.  Am. Compl. at ¶ 13; Dkt. No. 85-3, Marc Dutil Decl., dated Sept. 9, 2008, at ¶ 2.  The record shows that in a Grievance, dated July 9, 2007, Plaintiff asserted that since his arrival in B-2 dorm in August 2006, Dutil constantly allowed "inmates to smoke cigarettes and cigars in the bath-room, shower and slap-sink areas of B2 dorm when he works," and that Plaintiff "complain[ed] . . . to Dutil numerous [] times about the excessive smoking in these areas, [but] Dutil just ignore[d] the complaints and [did] nothing."[3]  Pl.'s Resp., Ex. E, Grievance, dated July 9, 2007.  Also in that Grievance, Plaintiff alleged that on several occasions in July 2007, Dutil saw inmates smoke in the B-2 bathroom and took no action.  *Id.*  For his part,  Dutil declares that

> [d]ue to the fact that there are areas in the dormitory that are considered private such as bathrooms and the shower areas, at times inmates will attempt to smoke in those indoor areas which is against the policy.
>
> There have been times when I conducted inspections in the bathroom and I smelled smoke, but by the time I arrived in the room, there was no evidence of who violated the rules.  In those cases, I was unable to issue a misbehavior report.
>
> However, whenever I witnessed any inmate violate the policy, I would immediately issue a misbehavior report and instruct the inmate to comply with policy.  Depending on the number of times the inmate had been in violation determined the level of punishment received by the inmate.
>
> I am a non-smoker and at no time did I knowingly allow any inmate or correction officer to violate the smoke free policy.

Dutil Decl. at ¶¶ 8-10 & 12.

Based on the record before us, we cannot determine whether or not Dutil displayed deliberate

---

[3] Although Plaintiff has provided a copy of this July 9, 2007 Grievance, there is no evidence nor allegation as to what became of it after it was ostensibly filed.  In that respect, there is no stamp of receipt from the IGRC on that Grievance.  Pl.'s Resp., Ex. E, Grievance, dated July 9, 2007.

indifference towards Plaintiff's living conditions.  Because material questions of fact exist, it is recommended that the Defendants' Motion be **denied** as to Plaintiff's Eighth Amendment claim against Dutil.  *See Colon v. Sawyer*, 2006 WL 721763 at *10 (N.D.N.Y. Mar. 20, 2006) (denying summary judgment when the record evidence, viewed in a light most favorable to the plaintiff, suggested "that prison workers . . . allowed smoking in his presence, despite his known condition [asthma] condition.").

### 2. Deliberate Indifference Claims against Sears and Demars

Defendant Lawrence Sears was Superintendent of Franklin from July 2005 through August 2007.  Dkt. No. 85-9, Sears Decl., dated Sept. 10, 2008, at ¶ 1.  Sears asserts that he enforced the smoking policy, which prohibited all indoor smoking, and monitored its success by receiving a monthly report from Defendant Demars, Deputy Superintendent of Programs.  *Id.* at ¶¶ 8-9.  Sears declares that his "only involvement related to the allegations of this lawsuit is limited to relying on [his] staff to conduct the appropriate investigations into grievances and/or complaints and reviewing reports."  *Id.* at ¶ 10.

The record shows that Plaintiff filed a Grievance (# 7395) on November 21, 2006, alleging that the Franklin administration was not enforcing the smoke-free policy.  Demars Decl., Ex. B, Grievance #7395, dated Nov. 16, 2006 (filed on Nov. 21, 2006).  Superintendent Sears responded as follows:

> [I]nvestigation reveals that the smoke-free policy is in effect at [Franklin].  Smoking is not permitted inside any building on facility grounds.  Cigarette receptacles have been located outside in many areas of the facility.  This allows inmates and staff to smoke outside and affords them a place to deposit the remains of the cigarette in an appropriate fashion.  Inmates who are found smoking indoors are subject to disciplinary action.  Staff who are observed in violation of the policy are dealt with accordingly.  The Grievant has made suggestions which he believes would strengthen the policy and help to reduce indoor smoking.  These suggestions have

been taken under advisement.  The local policy will be reviewed and certain changes may be made.  The Grievant's requested action is accepted to the extent that the Department's smoke-free policy is being enforced. . . . The investigation and all available reports at this time reveal the grievance is without merit.

*Id.*, Ex. B, Sup't Resp. to Grievance # 7395, dated Jan. 2, 2007.

The Central Office Review Committee (CORC) upheld the Superintendent's determination on appeal.  *Id.*, CORC Decision, dated Jan. 24, 2007.  In addition to Sears's formal response to Plaintiff's November 2006 Grievance, the record shows that Defendant Demars met with Plaintiff on December 29, 2006, to discuss his complaints.  Demars Decl. at ¶ 13.  After that meeting, Demars wrote a Memorandum to Superintendent Sears summarizing their discussion, indicating that he "advised [Plaintiff] that the policy is being enforced to the extent possible" and that "[i]ndividuals' rights to privacy make it difficult to determine who is smoking in bathrooms."  *Id.*, Ex. B, Mem. dated Jan. 2, 2007.  Demars noted that the "discussion was cordial" and that "some of [Plaintiff's] suggestions have merit and are worthy of consideration."  *Id.*

Plaintiff filed another Grievance (# 7558) on March 5, 2007, accusing officer R. Gordon and an un-named co-worker[4] of smoking a cigarette in the gym on February 28, 2007.  *Id.*, Ex. E, Grievance #7558, dated Mar. 1, 2007 (marked filed on Mar. 5, 2007).  Superintendent Sears denied that Grievance, noting that "[d]uring the investigation conducted by the area Sergeant, [] [Plaintiff] was uncooperative," and that "the officer working on the date and time in question provided a written statement denying [Plaintiff's] allegations."  *Id.*, Sup't Decision, dated Mar. 20, 2007.  On appeal, CORC upheld Sears's decision, affirming that "the facility administration conducted a proper investigation" into Plaintiff's accusations which revealed that "no officer named Gordon [was] working in the gym on 2/28/07" and that Plaintiff could not identify the second officer

---

[4] Neither R. Gordon nor the un-named "co-worker" are Defendants in this action.

*-11-*

mentioned in his Grievance.  *Id.*, CORC Decision, dated Apr. 18, 2007.[5]

As Deputy Superintendent of Programs, Defendant Demars is responsible for administering the smoke-free policy at Franklin.  Demars states that "Franklin rigorously enforces" these rules and that "approximately 15 to 20 misbehavior reports are issued each month to inmates found in violation of Franklin's policy."  *Id.* at ¶ 7.  Demars monitors enforcement of the smoke-free policy by producing reports that track the monthly totals of smoking-related inmate misbehavior reports and reports of employee smoking violations.  *Id.* at ¶ 15.  A review of the reports annexed to Demars's Declaration and Plaintiff's Response reveals that during the months of May 2006, January 2007, and March 2007 through February 2008,[6] on average, approximately ten (10) misbehavior reports per month were issued against inmates for smoking violations; there are no employee violations noted during that period.  *Id.*, Ex. C, Smoking Reps., dated Mar. 2007 through Feb. 2008; Pl.'s Resp., Ex. F, Smoking Reps., dated May 2006 and Jan. 2007; *see also* Attach. A.[7]

Both parties lay claim to these monthly reports in support of their respective positions: Defendants assert that the misbehavior reports reflect their attempt to enforce the smoke-free policy; Plaintiff argues that the reports support his contention that inmates consistently flouted that policy. Our focus in this section is on Plaintiff's allegations of deliberate indifference.  Thus, while we agree with Plaintiff that the monthly reports may support his contention that ETS levels were high due to

---

[5] Plaintiff also claims to have filed a Grievance in September 2006, however, that Grievance does not appear in the record before us.  Am. Compl. at ¶ 12.

[6] Defendants provided the monthly "smoking reports" for each month during the period of March 2007 through February 2008.  Demars Decl., Ex. C, Smoking Reps., dated Mar. 2007 through Feb. 2008.  Plaintiff attached to his Response smoking reports from May 2006 and January 2007.  Pl.'s Resp., Ex. F, Smoking Reps., dated May 2006 and Jan. 2007.  Plaintiff also submitted smoking reports from certain months during the period of 2001-2005, however, those reports are not relevant to Plaintiff's claims arising out of his confinement in Franklin which began in May 2006.

[7] The Court has attached to this Report-Recommendation and Order a chart of the compilation of the monthly reports present in the record.

inmate smoking, they also support the Defendants' contention that at least some efforts were undertaken to enforce the smoke-free policy.

Considering the record before us, we do not find that material questions of fact exist with respect to Plaintiff's claims of deliberate indifference against Sears and Demars.  As summarized above, the record shows that Plaintiff's Grievances were addressed, investigated, and even discussed with Plaintiff in a one-to-one conversation with Demars.  The record also reflects that during the time period relevant to Plaintiff's claims, there was a policy in effect at Franklin that proscribed all indoor smoking.  *See Colon v. Sawyer,* 2006 WL 721763, at *10 (N.D.N.Y. Mar. 20, 2006) (citations omitted) (noting that the existence of smoke-limiting policies "somewhat undermines any claim of deliberate indifference").  Also, the monthly reports show that such policy was enforced, even if some violations went unnoticed or unpunished.  In that respect, we note that the "imperfect enforcement of [] [a smoking] policy alone may not support a finding of deliberate indifference." *Enigwe v. Zenk*, 2007 WL 2713849, at *6 (E.D.N.Y. Sept. 14, 2007) (citation omitted); *see also Johnson v. Goord*, 2005 WL 2811776, at *8 (S.D.N.Y. Oct. 27, 2005) ("Neither the [smoking] policies adopted nor the enforcement thereof, even if imperfect, constitute deliberate indifference on the part of defendants.").  Therefore, we recommend that Plaintiff's deliberate indifference claims be **dismissed** as against Sears and Demars.[8]

### 3. *Deliberate Indifference Claims against Habeck and Rock*

Plaintiff's sole specific allegation against Defendant Deputy Superintendent Habeck is that he failed to properly oversee the medical department and to remedy the alleged constitutional

---

[8] Plaintiff has also alleged that Demars violated his due process rights. Am. Compl. at ¶ 33.  We consider that claim below in Part II.E.

violations committed by Nurse Dumas and other nurses.[9]  Am. Compl. at ¶ 38.  To the extent Plaintiff intended to assert a claim against Habeck based on his conditions of confinement, the record shows that Habeck did not work in the B-2 dorm, but routinely made rounds through the facility.  Dkt. No. 85-11, Kenneth Habeck Decl., dated Sept. 10, 2008, at ¶ 3.  Habeck swears that "[at] no time did [he] ever allow inmates, DOCS employees or [himself] to smoke in any indoor area at Franklin."  *Id.* at ¶ 5.  Plaintiff does not allege, and the record does not reflect, that Plaintiff made any verbal or written complaints to Habeck about violations of the smoke-free policy.  *Id.* at ¶¶ 7-8.  Thus, there are no specific allegations and nothing in the record to suggest that Habeck was deliberately indifferent or otherwise violated Plaintiff's Eighth Amendment rights.  Therefore, to the extent Plaintiff intended to assert such a claim against Habeck, it should be **dismissed**.

Defendant Rock was a Deputy Superintendent at Franklin for seven-and-a-half years until he moved to Great Meadow Correctional Facility on August 21, 2007.  Dkt. No. 85-8, David Rock Decl., dated Sept. 9, 2008, at ¶ 1.  Like Habeck, Rock was not stationed in the B-2 dorm, but made regular rounds throughout the facility.  *Id.* at ¶ 4; Pl.'s Dep. at p. 54 (stating that Rock was not regularly present in the B-2 dorm).  Rock states that he was "not in charge of monitoring the no-smoking policy and [] never allowed any one to violate the policy in [his] presence."  Rock Decl. at ¶ 8.  Plaintiff's only specific allegation against Defendant Rock is that he filed a complaint with Rock in August 2007 about the alleged non-enforcement of the smoke-free policy.  Am. Compl. at ¶ 31.  Plaintiff attached to his Response a letter of complaint addressed to Defendant Rock, dated August 5, 2007, in which Plaintiff accused Officer Parent and Lieutenant Bashaw of allowing inmates to smoke indoors.  Pl.'s Resp., Ex. C, Lt., dated Aug. 5, 2007.  Captain D. Phelix reported

---

[9] We consider Plaintiff's Eighth Amendment claims against the Franklin medical staff in Part II.C *infra*.

*-14-*

to Rock in a Memorandum, dated August 17, 2007, that he interviewed Bashaw, who said that while on rounds, he saw an inmate smoking in the B-2 dorm bathroom and ordered him to destroy the cigarette. *Id.*, Ex. G, Mem., dated Aug. 17, 2007. Phelix also reported that he interviewed Parent, who denied Plaintiff's allegations and made "clear that from this point on any violations of the smoking policy will be handled by him using a misbehavior report." *Id.* Thus, it does not appear that Rock had any personal involvement in investigating Plaintiff's August 5th complaint beyond receiving and perhaps reviewing Captain Felix's Memorandum.

In any event, Plaintiff does not make any specific allegation that Rock allowed inmates to smoke indoors at Franklin, and the record shows that the only complaint Plaintiff made to Rock, which concerned alleged violations by other officers, was duly investigated. Therefore, it is recommended that Plaintiff's Eighth Amendment claim against Rock be **dismissed**.

### 4. *Deliberate Indifference Claims against Goord, LeClaire, and Fischer*

Plaintiff asserts that Defendants Goord, LeClaire, and Fischer were deliberately indifferent to his ETS exposure because he sent them letters of complaint about the smoking situation and they failed to provide any remedy thereto.

Glenn S. Goord was the Commissioner of DOCS from December 3, 1996 until August 28, 2006. Dkt. No. 85, Glenn S. Goord Decl., dated Sept. 2008, at ¶ 1. Plaintiff asserts that he filed letters of complaint to Goord on November 25 and December 19, 2005, and on January 25, 2006. Pl.'s Resp. at pp. 2-3. Goord asserts that during his time as Commissioner, he did not receive any letters from Plaintiff regarding ETS at Franklin, but rather, that Plaintiff wrote him letters concerning Gowanda Correctional Facility ("Gowanda"). Goord Decl. at ¶¶ 11-12. The complaint letters sent to Goord, which Plaintiff has attached as Exhibits to his Response, all concern

enforcement of DOCS smoking policy at Gowanda.  Pl.'s Resp., Ex. C, Lts. to Goord, dated Oct. 25, 2005, Dec. 19, 2005, & Jan. 15, 2006.  Thus, Plaintiff has failed to demonstrate that Goord knew of or had any personal involvement with respect to his alleged constitutional violations that occurred at Franklin.  For that reason, it is recommended that Plaintiff's claims against Goord be **dismissed**.

Defendant Lucien J. LeClaire served as Acting DOCS Commissioner from September 2005 through December 2006.  Dkt. No. 85, Lucien J. LeClaire Decl., dated Sept. 5, 2008, at ¶ 2.  A review of the record shows that Plaintiff sent one letter of complaint to LeClaire, dated September 30, 2006, regarding ETS levels and non-compliance with the DOCS smoking policy at Franklin.  *Id*., Ex. C, Lt., dated Sept. 30, 2006; Am. Compl. at ¶ 25.  LeClaire states that as Acting Commissioner, his office "routinely received several thousand letters per year" from inmates, which were screened by his secretarial staff and sent to the "appropriate Deputy Commissioner who oversaw the area that encompassed the issue raised by the inmate.  The Deputy Commissioner investigated the matter and then prepared a response to the letter."  LeClaire Decl. at ¶ 6.  In the case of Plaintiff's September 30, 2006 Letter, LeClaire states that it was forwarded to Deputy Commissioner Anthony Annucci,[10] who responded in a letter that stated, "[b]ecause your letter seems to raise an issue concerning the proper enforcement of the non-smoking policy at your facility, I am forwarding a copy [t]hereof . . . to the facility Superintendent with the request that he investigate this matter and take whatever action . . . he deems necessary and proper to ensure that the smoking policy is fully enforced."  *Id.* at ¶ 13 & Ex. B, Lt., dated. Oct. 13, 2006.

The Second Circuit has held that a supervisor who merely forwards a prisoner's complaint to another official for investigation is not sufficiently personally involved to be held liable under §

---

[10] Anothy Annucci is not a named Defendant in this action.

*-16-*

1983.  *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (dismissing claims against DOCS Commissioner who forwarded a letter from plaintiff to another official for lack of personal involvement ); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (holding that mere linkage in the prison chain of command does not create supervisory liability).  Therefore, Plaintiff has failed to demonstrate that LeClaire was personally involved or that he displayed a deliberate indifference to the ETS levels at Franklin.  Therefore, it is recommended that Plaintiff's complaints against LeClaire be **dismissed**.

Defendant Brian Fischer is the current Commissioner of DOCS and has held that position since January 2007.  Dkt. No. 85, Brian Fischer Decl., dated Sept. 8, 2008, at ¶ 1.  The record shows that Plaintiff filed letters of complaint with Fischer on March 20, August 1, and August 12, 2007, about the violations of DOCS no-smoking policy.  Pl.'s Resp., Exs. B & C, Lts., dated Mar. 20, Aug. 1 & 12, 2007.  Like LeClaire, Fischer asserts that he does not personally read through the thousands of inmate complaints sent to his office each year, has no recollection of reading Plaintiff's letters, and that the letters were forwarded to Anthony Annucci, who responded by forwarding the letter to the Superintendent at Franklin.  Fischer Decl. at ¶¶ 6-7 & 12-16, Ex. C, Lt., dated Aug. 15, 2007.  Because Plaintiff has failed to demonstrate any deliberate indifference on the part of Fischer or additional involvement beyond his receipt and forwarding of letters, it is recommended that his claims against Fischer be **dismissed**.

### C. Deliberate Indifference to Medical Needs

Plaintiff claims that the Defendants were deliberately indifferent to his serious medical needs. To state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825,

*-17-*

834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Plaintiff alleges that Nurse Dumas was deliberately indifferent towards his serious medical

needs because (1) she allowed the nursing staff to improperly take and track his vital signs when he received medical treatment, (2) he was made to wait for up to an hour before receiving treatment for his asthma, and (3) he did not see a doctor from July 17 through September 4, 2007. Am. Compl. at ¶¶ 34, 36, & 52. The record shows that Plaintiff filed a Grievance on July 8, 2007, alleging that on several occasions he was made to wait for his daily breathing treatments for up to an hour, and another Grievance, dated July 23, 2007, alleging that Dumas had allowed an "unlicensed correctional officer" to check his vital signs in violation of DOCS regulations, and that such practice was common among the nursing staff. Dumas Decl., Ex. D, Grievances, dated July 8 & 23, 2007.

Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000) (internal quotation marks and citation omitted). Despite Plaintiff's allegations that the delays were deliberate and retaliatory in nature, there is no evidence on the record to support that claim.[11] *See* Dumas Decl. at ¶ 15 ("At times there was a waiting period for all inmates who were seeking treatment but at no time was the plaintiff made to wait longer than others and the wait never effected the Plaintiff's medical condition."). Furthermore, Plaintiff does not allege, and the record does not reflect, that his health was damaged or his condition worsened by the alleged one-hour delays. A review of Plaintiff's medical record indicates that he received treatment from the Franklin medical staff for his chronic asthma condition on a regular basis in the form of medication and use of inhalers/nebulizers. Pl.'s Med. Hist. at pp. 1-77.

---

[11] We consider Plaintiff's retaliation claim below in Part II.D.

Also, Plaintiff does not allege that he was denied medical treatment at any point while at Franklin, nor does he explain why he should have been seen by a doctor, or how the alleged denial of a visit with a medical doctor negatively impacted his health.  Finally, Plaintiff's claim that corrections officers violated DOCS policy when they checked his vital signs does not state a valid cause of action under the Eighth Amendment.

Therefore, we find that Plaintiff has failed to show that Nurse Dumas, or any of the nursing staff,[12] were deliberately indifferent toward his serious medical needs.  Because Plaintiff has failed to meet his burden under the subjective prong, we need not address whether his medical condition was sufficiently serious under the objective prong.  Therefore, it is recommended that these medically-related Eighth Amendment claims be **dismissed**.[13]

### D.  Retaliation

Plaintiff alleges that Defendant Nurse Dumas allowed "the nursing staff to violate [his] rights in an act of retaliation because of Plaintiff['s] many verbal complaints about all the smoking violations."  Am. Compl. at ¶ 34.  Plaintiff further alleges that the retaliation began after "Assistant Attorney General [Christina] L. Roberts contacted . . . Dumas" and asked her to send "an affidavit concerning Plaintiff['s] deteriorating health."[14]  *Id.*  Plaintiff asserts that the medical staff retaliated against him by making him wait up to one hour to receive "badly needed breathing treatment," and

---

[12] Other members of the nursing staff have not been named as Defendants in this action.

[13] Because we recommend dismissal of Plaintiff's Eighth Amendment claims against the Franklin medical staff, his supervisory liability claim against Defendant Rock for failure to properly oversee the medical department must also be **dismissed**.

[14] Plaintiff also asserts that Roberts's request to Dumas violated his rights because he "never signed a release for his medical information."  Am. Compl. at ¶ 34.  To the extent Plaintiff intended to assert a separate constitutional violation of his privacy rights, "[w]hen an inmate files suit against prison officials, subsequent release of medical records in defense of litigation does not violate any right of the inmate."  *Barnes v. Glennon*, 2006 WL 2811821, at *3 (N.D.N.Y. Sept. 28, 2006) (internal quotation marks and citations omitted).  Therefore, any such claim should be **dismissed**.

"refusing to properly chart in his medical records and take vitals of the treatment Plaintiff was receiving so the doctor could properly evaluate his condition." *Id.* at ¶¶ 34 & 52.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*,

2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

In this case, Plaintiff has alleged that from May through July 2007, Dumas allowed her subordinate nursing staff to make him wait for up to one hour before receiving his nebulizer treatments in retaliation for verbal complaints he made.[15] Plaintiff also alleges that the retaliation only began after he filed his first request for a TRO in the instant lawsuit in April 2007. Am. Compl. at ¶¶ 34-37. Plaintiff asserts that Dumas became aware of his lawsuit and TRO because Assistant Attorney General Christina L. Roberts, Esq., contacted Dumas and asked her to send an affidavit concerning Plaintiff's health. *Id.* at ¶ 34. An entry from Plaintiff's AHR, dated April 24, 2007, contains the following notation from Dumas: "I rec'd call from A.G. Inmate Ward is complaining about smoke in dorm. He is filing a restraining order against passive smoke. Security notified. AG

---

[15] To the extent Plaintiff intended to bring retaliation claims against unnamed members of the Franklin nursing staff, those claims should be dismissed for lack of any Defendant's personal involvement.

*-22-*

office wants affidavit regarding his health.  Wants to have statement that his health has been affected due to smoke."  Pl.'s AHR at entry dated Apr. 24, 2007.  Thus, Plaintiff's assertion is that after receiving notice of his lawsuit and TRO, Dumas retaliated against him by allowing her subordinates to make him wait for up to one hour to receive his nebulizer treatments.

Nurse Dumas was not a named Defendant in Plaintiff's original Complaint.  Dkt. No. 1, Compl.  On April 2, 2007, Plaintiff filed a Motion for TRO against several Defendants named in the original Complaint, asking for an order enjoining those Defendants from exposing him to dangerous levels of ETS.[16]  Dkt. No. 23, TRO, dated Apr. 2, 2007.  Dumas was not added as a party to this litigation until the filing of the Amended Complaint on January 28, 2008, well after the alleged retaliatory acts were taken during the period of May-July 2007.  Dkt. No. 64 & 77.  Therefore, to the extent Plaintiff intended to allege that Dumas retaliated against him because of his instant lawsuit and TRO, he has failed to allege a causal connection between his protected conduct (filing the lawsuit and TRO's) and the adverse actions taken (making him wait for nebulizer treatment).  There is no reason to believe that Dumas would be motivated to retaliate against Plaintiff because of his lawsuit concerning ETS levels in the dorm.   Dumas Decl. at ¶ 12.  In fact, after Plaintiff complained to Dumas on April 24, 2007, about the ETS levels in the dorm, Dumas "contacted the main housing sergeant regarding the plaintiff's concerns."  *Id*.; Pl.'s AHR, entry dated Apr. 24, 2007.  Moreover, Dumas had "no control over what happened in the dormitory."  Dumas Decl. at ¶ 12.

Plaintiff also alleges that Dumas and the Franklin nursing staff retaliated against him because of his "many verbal complaints . . . concerning nurses not charting or taking his vitals . . . and

---

[16] Plaintiff filed another Motion for a TRO, dated June 30, 2007, asking for the same relief.  Dkt. No. 37, TRO, dated June 30, 2007 (filed on July 5, 2007).  Both of those Motions were denied.  Dkt. Nos. 31 & 50.

making Plaintiff wait 40 minutes to an hour to receive nebulizer breathing treatment." Am. Compl.

at ¶ 40.  Plaintiff does not allege when, or if, he made such verbal complaints to Dumas, although

he has submitted a letter of complaint, dated June 17, 2007, addressed to Dumas's attention, in

which he alleged that he was made to wait fifty (50) minutes for his nebulizer treatment on June 16,

2007.  Pl.'s Resp., Ex. G, Lt., dated June 17, 2007.  In a subsequent Grievance, dated July 8, 2007,

Plaintiff stated that

> [o]n June 17, 2007, I filed a complaint to Acting Nurse administrator Dumas about
> the on going problem concerning the nursing staff . . . having me wait forty minutes
> for a nebulizer (breathing) treatment.  Nurse Dumas [met] with me a week later and
> we discuss[ed] my concerns[.]  [S]he reassure[d] me that the charting and long
> waiting for a treatment would be corrected.
>
> For three to four days after [our] meeting the long waits for breathing treatments
> [stopped] and then the waiting problem got worse.  The nurses and officers on the
> 7am to 3 pm shift are acting in complicity with one another and having me wait
> about an hour for a badly needed breathing treatment just about every day.

Id., Ex. H, Grievance, dated July 8, 2007.

Plaintiff has not made any other allegation as to how or why Dumas, with retaliatory animus,

allowed the  the nursing staff to delay his nebulizer treatments.  Plaintiff's July 8, 2007 Grievance

indicates that he sent a letter of complaint to Dumas, who responded by meeting with him and

assuring him that remedial steps would be taken.  Id.  Plaintiff also asserts that in the days following

that meeting, the long waits stopped.  For her part, Dumas asserts that "[a]t times there was a waiting

period for all inmates who were seeking treatment but at no time was the plaintiff made to wait

longer than others."  Dumas Decl. at ¶ 15.

Beyond his conclusory allegation that Dumas allowed her subordinates to delay Plaintiff's

nebulizer treatments, Plaintiff has not alleged any facts nor presented any evidence of adverse

actions taken on the part of Dumas.  To the contrary, the evidence provided shows that Dumas

addressed Plaintiff's concerns.   Therefore, it is recommended that Plaintiff's retaliation claims against Dumas be **dismissed**.

### E.  Due Process/ADA Claims

1.  *Due Process*

Plaintiff alleges that on August 19, 2007, he filed a Request for Reasonable Accommodations pursuant to the ADA, 42 U.S.C. § 12131 *et seq*., which was denied by Demars, who allegedly failed to forward Plaintiff's request to the medical department for verification of his alleged disability. Am. Compl. at ¶ 33; Pl.'s Resp. at pp. 8-9.  Plaintiff claims Demars's actions violated his due process rights.

The record shows that Plaintiff filed the following Request with Demars:

I request reasonable accommodation to participate in the following services: Such as using the fundamental amenities within the housing unit, i.e. showering, washing in the sink, brushing teeth, utilizing the urinal and [toilets], and mirrors in the bathroom, among the laundry and slop-sink area.

I am limited in my ability to: Utilize the above services, due to restricted breathing and limited capacity to breath: ability to breath fumes and smoke filled areas; ability to maintain physical endurance when exposed to asthma [irritations]; and accessibility to asthma nebulizer treatments not readily available during [irritant] precipitated asthma attacks.

Pl.'s Resp., Ex. E, Pl.'s Req. for Reasonable Accommodations, dated Aug. 19, 2007.

In response to that Request, Demars wrote the following Memorandum to Plaintiff:

I received your request for Reasonable Accommodation via form # 2614.  I am returning said form to you as this request is not a reasonable accommodation issue. A tobacco smoke, fume, and carcinogen-free environment is not limited to individuals with health-related issues.  It is every inmate's and employee's right to live and work in a safe environment.  Indoor smoking is banned in all buildings within the facility.  Unfortunately, some individuals ignore this rule as is the case with many rules.  When inmates are observed smoking indoors, they are subject to a misbehavior report and whatever sanctions result from a disciplinary hearing.  We will continue to enforce the no smoking policy and take disciplinary action when warranted.

*-25-*

*Id.*, Ex. F, Mem., dated Aug. 20, 2007.

In order to state a valid due process claim, a plaintiff must show that there is a protected liberty or property interest at stake. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (citation omitted). In this case, Plaintiff has failed to show that he possessed a liberty or property interest protected by the Constitution or federal statutes. As Defendant Demars alluded to in his Memorandum, Plaintiff's Request for Reasonable Accommodations was essentially a complaint about the conditions of his confinement. We have already addressed the merits of that claim. Therefore, it is recommended that Plaintiff's due process claim be **dismissed.**

2. *ADA Claim*[17]

To bring a claim under the ADA, a plaintiff must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars*, 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (citation omitted).

Here, Plaintiff alleges that his asthma is disabling. Courts in this Circuit have held that "while asthma is certainly an impairment, it cannot constitute a disability under the ADA unless it *substantially limits* or *significantly restricts* the sufferer's ability to perform a major life activity." *See, e.g., Droutman v. New York Blood Ctr., Inc.*, 2005 WL 1796120, at *6 (E.D.N.Y. July 27, 2005) (emphasis in original) (internal quotation marks and citations omitted). Although Plaintiff has alleged discomfort and exacerbation of his asthma, he has not proffered any evidence that his ability to perform a major life activity was significantly restricted. To the contrary, he has alleged that he

---

[17] We note that Plaintiff does not address this ADA claim in his Response to the Defendants' Motion. Dkt. No. 94, Pl.'s Mem. of Law. Nevertheless, because Plaintiff is proceeding *pro se*, we will proceed to the merits of the claim.

was forced, but nevertheless able, to conduct his daily activities in a smoke-filled environment. Therefore, it is recommended that Plaintiff's ADA claim be **dismissed**.

### F. Other Claims

#### 1. *Conspiracy*

Liberally construing Plaintiff's Amended Complaint, it appears that he intends to bring claims of conspiracy against unnamed Franklin medical staff for (1) deliberately not charting his medical condition in order to cover up the constitutional violations he suffered, and (2) against Defendants for otherwise attempting to "cover-up the smoking violations."[18] Am. Compl. at ¶¶ 52 & 54. There are no factual allegations against any named Defendant nor evidence on the record to support either of these conclusory claims. Therefore, it is recommended that they be **dismissed**.

#### 2. *State Law Claims*

In his Amended Complaint, Plaintiff lists in conclusory fashion several state laws that the Defendants allegedly violated. Beyond listing these laws, Plaintiff does not offer any explanation as to how his rights were violated. *See* Am. Compl. at ¶ 53(a). Defendants do not address these claims in their Motion for Summary Judgment. However, notwithstanding that omission, under 28 U.S.C. § 1915(e)(2)(B)(ii), this Court has the power to review Plaintiff's Complaint for failure to state a claim *at any time*. *See, e.g.*, *Zimmerman v. Burge*, 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008) ((citing 28 U.S.C. § 1915(e)(2)(B)(ii) and noting that "even where a defendant has not requested dismissal based on the failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim[.]"). We find these state-law based claims conclusory and recommend their **dismissal**.

_____

[18] Plaintiff also does not address these conspiracy claims in his Response to the Defendants' Motion. *See* Dkt. No. 94, Pl.'s Mem. of Law.

### 3. *Criminal Statutes*

Plaintiff also lists violations of 18 U.S.C. §§ 241, 242, 1503, & 1505.  Am. Compl. at ¶ 53(b).  These are all criminal statutes that do not offer Plaintiff any civil recourse.  Therefore, these claims should also be **dismissed**.

## G.  Qualified Immunity

Defendants raise the affirmative defense of qualified immunity.   Because we have recommended dismissal of all Plaintiff's claims except those against Defendant Dutil, we need only consider whether Dutil is entitled to qualified immunity.

Qualified immunity will shield "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *African Trade & Information Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000).

In this case, as of the date of the Supreme Court's *Helling* decision in 1993, it is clearly established "that the Eighth Amendment prohibits deliberate indifference to an inmate's exposure to levels of ETS which pose an unreasonable risk of future harm to the prisoner's health." *Colon v. Sawyer*, 2006 WL 721763 at *12 (citing *Warren v. Keane*, 196 F.3d at 330, 332-33 (2d Cir. 1999)). Furthermore, a reasonable person in Dutil's position would have known that exposure of an asthmatic inmate to the amounts of ETS alleged by Plaintiff could violate the Eighth Amendment. *Id.* at *13.  Therefore, it is recommended that qualified immunity not be granted at this juncture.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

*-28-*

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 85) be **GRANTED in part** and **DENIED in part** in accordance with this opinion; and it is further

**RECOMMENDED**, that should our recommendations be adopted, Plaintiff's only remaining claim will be his Eighth Amendment deliberate indifference claim against Defendant Dutil based on his exposure to ETS; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a)-(b).


Date:    September 16, 2009
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-29-*

<u>ATTACHMENT A</u>

The following chart is a compilation of the monthly reports present in the record:

| Month | Year | Number of Inmate Misbehavior Reports Issued for Smoking Violations | Number of Employee Smoking Violations |
|---|---|---|---|
| May | 2006 | 19 | 0 |
| January | 2007 | 15 | 0 |
| March | 2007 | 11 | 0 |
| April | 2007 | 12 | 0 |
| May | 2007 | 6 | 0 |
| June | 2007 | 7 | 0 |
| July | 2007 | 9 | 0 |
| August | 2007 | 13 | 0 |
| September | 2007 | 10 | 0 |
| October | 2007 | 5 | 0 |
| November | 2007 | 1 | 0 |
| December | 2007 | 8 | 0 |
| January | 2008 | 13 | 0 |
| February | 2008 | 13 | 0 |
| **Average:** | | **10.14** | **0** |